J-S56016-15
J-S56017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: K.B., A MINOR

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: M.W.

No. 633 MDA 2015

Appeal from the Order entered March 11, 2015,
in the Court of Common Pleas of Cumberland County, Domestic
Relations, at No(s): CP-21-DP-0000120-2012

IN THE INTEREST OF: K.B., A MINOR

APPEAL OF: M.W., MOTHER                No. 639 MDA 2015

Appeal from the Decree entered March 11, 2015,
in the Court of Common Pleas of Cumberland County, Orphans'
Court, at No(s): 12-Adoptions-2015

BEFORE:  SHOGAN, JENKINS, and PLATT*, JJ.

MEMORANDUM BY JENKINS, J.:              **FILED NOVEMBER 13, 2015**

M.W. ("Mother") appeals from the Order and Decree dated March 11, 2015, and entered on March 12, 2015, in the Cumberland County Court of Common Pleas, Orphans' Court Division, changing the permanency goal for her dependent minor daughter, K.B. ("Child"), born in August of 2006, from return to parent to adoption under section 6351 of the Juvenile Act, 42 Pa. C.S. § 6351, and involuntarily terminating her parental rights to Child

---

* Retired Senior Judge specially assigned to the Superior Court.

pursuant to section 2511(a)(8) and (b) of the Adoption Act, 23 Pa.C.S. § 2511(a)(8) and (b). We affirm.[1]

The relevant facts and procedural history of this case are as follows. Cumberland County Children & Youth Services ("CYS") has been involved with Mother on a consistent basis since September 2003, receiving numerous referrals alleging inappropriate discipline, conduct by Mother and Child's stepfather, S.W., that places Child at risk, concerns regarding Mother's mental health, unsanitary living conditions, and inadequate hygiene. Dependency Petition, 8/9/12, at 3. Over the course of CYS's involvement with Mother, she reported having been diagnosed with depression, paranoid schizophrenia, ADHD, bipolar disorder, and borderline personality disorder. *Id.* Mother also reported that she receives mental health services from Franklin Family Services. *Id.* Although Mother has consistently tested negative for drugs, S.W. has tested positive for marijuana on multiple drug tests administered continually since June 2011. *Id.* Further, Child has been diagnosed with post-traumatic stress disorder and has been observed to engage in self-mutilation, for which she has been receiving Therapeutic Staff Support and mobile therapy. Master's Recommendation, 8/21/12, at 1.

On August 6, 2012, CYS received a referral reporting drug activity occurring in the family residence. Dependency Petition, 8/9/12, at 5. As a result, CYS implemented a safety plan stipulating that Mother and S.W. were

_____

[1] K.B.'s father, M.B. ("Father"), is currently incarcerated at Five Points Correctional Facility in Romulus, New York for 1st degree manslaughter. Father's minimum release date is September 2027 and his maximum release date is November 2030. He has not filed an appeal from the trial court's Order or Decree, nor is he a party to this appeal.

not to have unsupervised contact or be left alone with Child until further notice. *Id.* Additionally, it was agreed that family friend, J.S., would care for Child and ensure compliance with the safety plan. *Id.* On August 9, 2012, CYS filed a dependency petition, alleging unsanitary living conditions, child abuse, parental drug use, and drug trafficking being conducted out of the family residence. *Id.* at 4-5. That same day, an adjudicatory hearing was held at the conclusion of which the Juvenile Court Master ("Master") issued a Recommendation that Child not be found dependent. Integral to the Master's Recommendation was Mother's commitment to cooperate with all recommended services, including the Alternative Behavior Consultants TIPS Program, mental health services, individual counseling and medication management, and substantial continuing mental health services and counseling for Child. Master's Recommendation, 8/21/12, at 1. On August 16, 2012, the trial court issued an Order adopting the Master's Recommendation.

On December 10, 2012, CYS received a child abuse report alleging that Mother and S.W. had sexually abused Child. Dependency Petition, 12/13/12, at 4. On the basis of the allegations, CYS petitioned for and was granted emergency protective custody of Child. *Id.* That same day, Child was placed in The Bair Foundation foster home of C.K and D.K. *Id.* On December 13, 2012, CYS filed a dependency petition and a shelter care application. After a shelter care hearing, the Master issued a Recommendation that Child be found dependent, and that legal and physical custody of Child be transferred to CYS with the permanent placement goal of

return to parent. On December 21, 2012, the trial court issued an Order adopting the Master's Recommendation.

On December 28, 2012, a permanency plan was created, which set forth the following objectives for Mother: (1) to improve mental health functioning; (2) to better manage Child's behavior; (3) to be drug and alcohol free; (4) to obtain an education; (5) to have a clean home; (6) to be financially stable; (7) to demonstrate being free of head lice and bed bugs and remaining free of head lice and bed bugs; (8) to maintain contact with Child on a regular basis as arranged with caseworker; (9) to cooperate with Domestic Relations for support of Child as determined by the trial court; and (10) to be involved in case planning. CYS's Permanency Planning Review Summary & Pre-Dispositional Statement, 4/22/13, at 3-4. On April 19, 2013, CYS filed a petition for a permanency review hearing.

A permanency review hearing took place on May 13, 2013. In its ensuing Recommendation, the Master found that Mother was in substantial compliance with the permanency plan, and that she had made substantial progress toward alleviating the circumstances which necessitated placement. The Master also noted that a Child Protective Services investigation determined that the allegations of sexual abuse against Mother were unfounded, and that Mother had separated from S.W. and was pursuing a divorce. Master's Recommendation, 5/20/13, at 3. On May, 17, 2013, the trial court issued an Order adopting the Master's recommendation.

At the next permanency review hearing, on October 10, 2013, CYS reported that Mother was no longer attending parenting classes or mental health counseling, as required under the permanency plan. On February 18,

2014, CYS moved to suspend Mother's visitation based on the assessment of Child's therapist, Jennifer Dunbar-Gilfus, that continued contact posed a grave danger to Child's mental health and safety. On February 25, 2014, the trial court denied CYS's motion because Ms. Dunbar-Gilfus was unavailable to testify at the scheduled hearing.

On March 19, 2014, a permanency review hearing was conducted at which Ms. Dunbar-Gilfus testified via telephone conference. After the hearing, the Master issued a Recommendation in which it found the following:

> [Child's therapist's] testimony indicates that [Child] has reached a point in her therapy where she is processing [the] allegations of past sexual abuse by [Mother]. During the same period of time that she has been engaging in this stage of therapy, she has required two in-patient hospitalizations and has remained in partial hospitalization when she has not required full in-patient care. Most recently, she was taken to Crisis on Monday, 03/10/2013[,] and was recommended for placement at Kids Peace due to her self-injurious behaviors and threats of suicide. [Child's therapist's] testimony was that any frequency of contact with [Mother] for any length of time, including in a therapeutic setting, poses a grave threat of harm to [Child] while she is in this stage of therapy.
>
> Evidence of her recent hospitalizations and her treating therapist's expert opinion clearly demonstrates that while [Child] is in her current therapeutic stage of processing allegations of prior sexual abuse by [Mother], visitation between [Child] and [Mother] poses a grave threat of harm to [Child].
>
> These findings are not intended to indicate that [Mother] in fact sexually abused [Child] and it is noted that the allegations were previously unfounded. . . .
>
> As established elsewhere in this order, it should be noted that [Child] has been in placement for 15 months, [Mother] has made minimal progress in eliminating the circumstances that

> originally necessitated placement, and [CYS's] compelling reason for not pursuing a goal change at this time is centered on [Child's] mental health driven need for minimal change, as opposed to progress on [Mother's part].

Master's Recommendation, 3/19/14, at 4. That same day, the trial court issued an Order adopting the Master's Recommendation.

Both Ms. Dunbar-Gilfus as well as Child's psychiatrist, Dr. Nikita Eike, testified at the next permanency review hearing, which occurred on August 21, 2014. In her testimony, Ms. Dunbar-Gilfus reiterated her contention that any contact with Mother posed a grave threat of harm to Child's psychological well-being. Dr. Eike testified to her observation that the prospect of resuming contact with Mother caused Child to exhibit selective mutism and lapse into a quasi-catatonic state. Master's Recommendation, 8/28/14, at 3. Further, Dr. Eike testified that upon the mere mentioning of contact with her Mother, Child was observed to "curl in on herself and start to rock." *Id.*

On October 22, 2014, CYS filed a petition to change Child's permanency goal from return to parent to adoption. On February 20, 2015, CYS filed a petition to involuntarily terminate Mother's parental rights to Child, alleging the elements of 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).[2] On March 11, 2015, the trial court held a hearing on CYS's petitions. At the hearing, Dr. Eike testified to Child's consistency in not wanting any contact with Mother, indicating that just the prospect of reunification made her so distraught that she had to be hospitalized. Dr. Eike went on to conclude that

---

[2] On February 20, 2015, CYS also filed a petition to involuntarily terminate Father's parental rights to Child, alleging the elements of 23 Pa.C.S. § 2511(a)(2) and (b).

- 6 -

termination of Mother's parental rights was in Child's best interest, as it would remove a major stressor from her life and possibly benefit her therapeutically. Trial Ct. Op., 5/14/15, at 4. At the conclusion of the hearing, the trial court issued the underlying Order, changing Child's permanent placement goal from return to parent to adoption, and Decree, involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(8) and (b).[3] On April 10, 2015, Mother filed simultaneously a timely Notice of Appeal and a Concise Statement of Errors Complained of on Appeal, in accordance with Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises four issues for our review:

1. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining that [CYS] presented evidence so clear, direct, weighty, and convincing as to enable the fact finder to come to a clear conviction without hesitancy[] of the truth of the precise facts in issue?

2. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining the best interests of [Child] would be served by changing the permanency goal from reunification to adoption, when the evidence indicated that Mother could provide for [Child's] needs and appropriately parent [Child]?

3. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining the best interests of [Child] would be served by terminating the parental rights of Mother, when the evidence indicated that the original reasons for placement of [Child] no longer exist or had been substantially eliminated?

---

[3] By separate Decree, the trial court involuntarily terminated Father's parental rights to Child.

4. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining the best interests of [Child] would be served by changing the goal to adoption; terminating Mother's parental rights when the evidence indicated that based on [Child's] therapist's testimony, Mother was not able to see [Child] or work on the established goal of reunification for a substantial time during the pendency of this case?

Mother's Brief at 5-6.

We review appeals from the involuntary termination of parental rights according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re R.J.T.*, 608 Pa. 9, [28-29,] 9 A.3d 1179, 1190 (Pa. 2010)]. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re:*] *R.I.S.*, [614 Pa. 275], 36 A.3d [567, 572 (2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel-Bassett v. Kia Motors America, Inc.*, [613 Pa. 371], 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility

determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (1994).

*In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, which requires a bifurcated analysis:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (*citing* 23 Pa.C.S. § 2511).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (*quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

- 9 -

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Mother's parental rights pursuant to section 2511(a)(8) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8) and (b).

Further, to terminate parental rights pursuant to section 2511(a)(8), it must be demonstrated that: "(1) [t]he child has been removed from

- 10 -

parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(8). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the 12-month period has been established, the trial court must next determine whether the conditions that led to the children's removal continue to exist. *Id.* "[I]f a parent fails to cooperate or appears incapable of benefiting from the reasonable efforts supplied over a realistic period of time, [the agency] has fulfilled its mandate and upon proof of satisfaction of the reasonable good faith effort, the termination petition may be granted." *Id.* (citation omitted). Moreover, "[a]s this Court has repeatedly indicated, termination under subsection (a)(8) 'does *not* require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of the children.'" *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009) (quoting *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006)) (emphasis in original). Instead, subsection (a)(8) "requires only that the conditions continue to exist, not an evaluation of parental willingness or ability to remedy them." *Id.* (quoting *In re C.L.G.*, 956 A.2d 999, 1007 (Pa. Super. 2008)).

In her brief on appeal, Mother argues that CYS presented insufficient evidence to sustain its burden under section 2511(a)(8) and (b), and, thus, that the trial court abused its discretion in involuntarily terminating her

parental rights to Child. Specifically, Mother contends that the trial court relied too heavily on the unfavorable testimony of Child's therapist, Ms. Dunbar-Gilfus, and Child's psychiatrist, Dr. Eike, as opposed to the favorable testimony of Alternative Behavior Consultants's parenting counselor, Lee Marriott. Mother notes that Ms. Marriott testified to the positive interaction between Mother and Child during parenting sessions, stating:

> It was very positive. [Child] was always happy to see [Mother]. [Mother] was always happy to see [Child]. . . . [Mother] had appropriate nutritious snacks or meals. [Mother] had appropriate activities. [Mother] had gotten not only [Child's] bedroom together with toys and pictures but also had a separate playroom set up for [Child]. It was always positive. [Child] was happy, cooperative, excited. [Child] had fun. [Mother] was happy, encouraging, and positive during the visits.

Mother's Brief at 13-14 (*quoting* Notes of Testimony, 3/11/15, at 21). In addition, Mother argues that there was insufficient evidence adduced for the trial court to properly consider the bond between Mother and Child due to the termination of Mother's visitation with Child in March 2014 on the basis of Ms. Dunbar-Gilfus's assessment that continued contact with Mother posed a grave threat of harm to Child's psychological well-being. *Id.* at 14-16. As such, Mother claims that the trial court erred in determining that termination of her parental rights would best serve the needs and welfare of Child under section 2511(b). We disagree.

In its Rule 1925(a) Opinion, the trial court explained its analysis under section 2511(a)(8) as follows:

> [Child] had been in placement for just a few days shy of 27 months at the time of the [March 11, 2015] hearing on [CYS's] petition[s]. The effects of the trauma she received while living with [] Mother caused her severe and ongoing mental health issues. Just the mention of [] Mother causes her to

decompensate. [Dr. Eike] noted that [Child] is "acutely aware of every court date." She became so emotionally distraught at the prospect of reunification that she required in-patient psychiatric care around the time of every scheduled court hearing over the past year.

The conditions which led to placement continue to exist at the time of [the] [O]rder. Mother was still unable to care for [Child]. [Mother] cannot even be in [Child's] presence without causing [Child] severe emotional harm. While the alleged sexual abuse may have been unfounded, [Child] continues to make those allegations against Mother. Furthermore, once [Child] began to process those allegations in therapy, her already fragile mental health deteriorated significantly.

Trial Ct. Op. at 5-6 (footnote citation omitted).

Mother's argument, as it relates to section 2511(a)(8), is, in essence, an attempt to have this Court re-weigh the evidence presented and revisit the credibility determinations of the trial court. However, it is well established that "[t]he trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony." *In re Adoption of R.J.S.*, 901 A.2d 502, 506 (Pa. Super. 2006). Further, if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *See In re Adoption of T.B.B.*, 835 A.2d at 394. Here, we are satisfied that the trial court's findings are supported by clear and convincing, competent, and sufficient evidence, and that it reasonably concluded that the elements of section 2511(a)(8) were met by the facts before it. Accordingly, we discern no abuse of discretion or error of law on this issue.

Having determined that the requirements of section 2511(a) are satisfied, we proceed to review whether the trial court properly found that

termination of Mother's parental rights was in the best interest of Child under section 2511(b). With respect to section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d [at] 1287 [], this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d [at 762-63]. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Here, our review of the record indicates that there is clear and convincing, competent evidence to support the trial court's decision that termination of Mother's parental rights best serves Child's developmental, physical, and emotional needs and welfare. While acknowledging Mother's feelings of love and affection for Child, the trial court appropriately concluded that the emotional stress and mental health consequences suffered by Child at the mere prospect of reunification, in conjunction with Mother's current inability to meet Child's needs, far outweigh whatever bond that might exist between Mother and Child. As such, we find that it was appropriate for the trial court to determine that the termination of Mother's parental rights would not have a detrimental effect on Child and would be in Child's best interest. In consideration of these circumstances and our

careful review of the record, we conclude that the trial court did not abuse its discretion or commit an error of law in finding competent evidence to support the termination of Mother's parental rights to Child under section 2511(b).

Finally, we address Mother's claim that the trial court committed an abuse of discretion in changing Child's permanency goal from return to parent to adoption.

We review dependency cases according to the following standard:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d at 1190 (citation omitted).

This matter is controlled by the Juvenile Act, 42 Pa.C.S. § 6301. In determining a petition for a goal change, the trial court must consider:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (*citing* 42 Pa.C.S. § 6351(f)).

Additionally, section 6351(f.1) of the Juvenile Act requires the trial court to make a determination regarding the child's goal:

> **(f.1) Additional determination.**—Based upon the determinations made under subsection (f) and all relevant

- 15 -

> evidence presented at the hearing, the court shall determine one of the following:
>
> * * *
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S. § 6351(f.1).

On the issue of a goal change, this Court has stated:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. **See In re Sweeney**, 574 A.2d 690, 691 (Pa. Super. 1990) (noting that "[o]nce a child is adjudicated dependent. . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." **In re E.F.V.**, 461 A.2d 1263, 1267 (Pa. Super. 1983) (citation omitted).

**In re K.C.**, 903 A.2d 12, 14-15 (Pa. Super. 2006).

After a careful review of the record, the trial court's Opinion, the briefs on appeal, and the relevant law, we conclude that there is clear and convincing, competent evidence to support the trial court's decision to change Child's permanency goal from return to parent to adoption. As such, we discern no abuse of discretion or error of law on this issue.

- 16 -

Accordingly, for the reasons stated above, we affirm the trial court's Order, changing Child's permanency goal from return to parent to adoption, and Decree, involuntarily terminating the parental rights of Mother to Child pursuant to 23 Pa.C.S. § 2511(a)(8) and (b).

Order and Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2015