J-S09002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: Z.N.S., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.S., FATHER | : : : : : : : | |
| | : | No. 1533 MDA 2017 |

Appeal from the Decree September 22, 2017
in the Court of Common Pleas of Dauphin County
Orphans' Court at No.:  77 AD 2017

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                                **FILED MAY 01, 2018**

M.S. (Father) appeals the decree of Court of Common Pleas of Dauphin County (trial court), entered September 22, 2017, that terminated his parental rights to his daughter Z.N.S (Child), born in April of 2010, and changed Child's goal to adoption.  Father's attorney has filed a motion to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We affirm the trial court and we grant counsel's motion to withdraw.[1]

On June 10, 2015, Dauphin County Social Services for Children and Youth (DCSSCY) received a referral that indicated that Child and two siblings

---

[1]  The trial court also terminated the parental rights of Child's mother, W.S. (Mother).  Mother did not appeal that termination and is not a party to this appeal.

---

*   Retired Senior Judge assigned to the Superior Court.

were in the care of parents who were under the influence of heroin. (*See* N.T. Hearing, 9/19/17, at 25). Mother and Father substantiated the allegations by admitting to heroin use and providing positive urine screens. (*See id.* at 26). DCSSCY established a safety plan and placed Child and her siblings in the care of the children's Maternal Aunt. DCSSCY filed a dependency petition on July 29, 2015, after Mother and Father failed to make any progress on the safety plan.

At the Adjudication and Disposition hearing on July 29, 2015, DCSSCY established a family service plan (FSP) that required Father: to attend all court hearings, DCSSCY meetings and treatment plan meetings; sign all release forms requested by the DCSSCY; notify DCSSCY within twenty-four hours of a new residence or new contact information; present to DCSSCY for an assessment as to whether he could provide safe and permanent care for Child; obtain and maintain employment and safe and stable housing; maintain a budget; and, attend all scheduled visitation with Child and Child's medical and educational appointments. (*See id.* at 31-35, 37-38).

Father appeared only at the safety plan hearing held on June 11, 2015, the adjudication hearing on July 29, 2015, and a court hearing on October 6, 2015. Because he was incarcerated, Father participated by phone in a permanency review hearing on May 4, 2017. Father did not participate in any treatment plan meetings or DCSSCY meetings. (*See id.* at 32-33).

Father did not initiate any contact with DCSSCY nor did he attempt to notify the DCSSCY of his whereabouts during the pendency of the FSP. DCSSCY caseworker, Heather Gutshall, had to research public records to locate Father in Dauphin County Prison. (*See id.* at 33-34).

Father signed no release of information forms. (*See id.* at 34). At various times, Father was incarcerated in one of several counties. Father did not notify the Agency when he was released from incarceration or moved to a different facility. (*See id.* at 34-35). Father presented to DCSSCY on one occasion, September 28, 2015, at which time he tested positive for marijuana. (*See id.* at 35-36). During the pendency of the case, Father was either homeless or incarcerated and failed to take any action to secure appropriate housing. (*See id.* at 37). Father failed to attend any of Child's numerous medical or educational appointments either by phone or in person. (*See id.* at 38).

DCSSCY filed a petition to terminate Father's parental rights on July 5, 2017. At the hearing held on that petition on September 19, 2017, Ms. Gutshall testified that based upon Child's placement in care for twenty-seven months and Father's failure to make any progress as to the service objectives, the termination of his parental rights would best serve Child's interests. (*See id.* at 38). Ms. Gutshall testified that Child's pre-adoptive foster family has provided Child with stability that has enabled Child to make significant progress with her medical and mental health and her educational needs. (*See*

*id.*).  The family has ensured that Child receives necessary trauma therapy and psychiatric medication.  (*See id.* at 39).  Ms. Gutshall testified that the family advocates for Child to ensure that she receives every resource she requires.  (*See id.* at 41).  Ms. Gutshall has observed that the family and Child enjoy a loving relationship.  (*See id.* at 40).  Child was seven years of age at the time of the termination hearing.  She wishes to remain with her pre-adoptive foster family.  (*See id.*).

At the time of the hearing, Father was incarcerated in Schuylkill County Prison.  In the preceding twelve months, Father was incarcerated in Dauphin, Perry, and Cumberland County Prisons.  (*See id.* at 45).  Father testified that he received drug counseling during his incarceration; counseling he did not report to DCSSCY.  Father testified that when he completes his criminal sentences, he intends to continue with drug and alcohol treatment and hopes to get his life together.  (*See id.* at 47).

The trial court entered its decree terminating Father's parental rights and changing Child's goal to adoption on September 22, 2017.  Father filed his notice of appeal on October 2, 2017.[2]

Father's attorney has filed an application to withdraw as counsel and an *Anders* brief in which he raises the questions:

---

[2]  Because he intended to file an *Anders* brief, counsel for Father did not file a concise statement of errors complained of on appeal.  *See In re J.T.*, 983 A.2d 771, 774 (Pa. Super. 2009); Pa.R.A.P. 1925(c)(4).

1. Whether the trial court abused its discretion when it changed [Child's] goal from reunification to adoption?

2. Whether the trial court abused its discretion when it involuntarily terminated [] Father's parental rights?

(**Anders** Brief, at 8) (unnecessary capitalization removed).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Here, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the

termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

In regard to incarcerated persons, our Supreme Court has stated:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.
>
> *     *     *
>
> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A] § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d 883, 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); *In re: E.A.P.*, 944

A.2d 79, 85 (Pa. Super. 2008) (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).  If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b).  In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d 817, 828, 830-31 (Pa. 2012) (some citation formatting provided).[3, 4]

The Adoption Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond.  *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993).  However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert.  *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

---

[3] We find no evidence in the record to indicate that Father made any effort to reach out to Child from prison and conclude therefore that the fact that Father was incarcerated is not relevant to our analysis.

[4] The Supreme Court cited its decision in *In re: Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975), for the proposition that termination may be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-month period.  *See In re Adoption of S.P.*, *supra* at 828. *McCray* was written in the context of subsection (a)(1), but applies to subsection (a)(8) as well.

Before we begin our analysis, we must dispose of the application to withdraw as counsel filed by Father's attorney. Father's counsel, Damian J. DeStefano, has filed an application with this Court to withdraw from representation pursuant to *Anders* and *McClendon*.

Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and
>
> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citations omitted).

In *In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. "When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *In re S.M.B.*, *supra* at 1237.

In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that

- 9 -

counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. . . .

***Santiago***, ***supra*** at 361. "After an appellate court receives an ***Anders*** brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." ***In re S.M.B.***, ***supra*** at 1237 (citation omitted).

With respect to the third requirement of ***Anders***, that counsel inform the defendant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Instantly, Father's attorney, in his application to withdraw as counsel, has stated that he has made a conscientious review of the record, concluded that his client's appeal is wholly frivolous, and stated the reasons for his conclusion. In addition, he timely mailed his client: (1) a copy of his petition to withdraw; (2) a copy of his ***Anders*** brief; and (3) a letter advising his client of his rights to proceed *pro se* or to retain private counsel and to raise any additional issues. Counsel has filed the required ***Anders*** brief in this Court setting forth the issues he believes might arguably support his client's appeal. Thus, counsel for Father has satisfied the procedural requirements of ***Anders***

and we will conduct an independent review to determine if "the appeal is wholly frivolous." *In re S.M.B.*, *supra* at 1237 (citation omitted).

The trial court did not abuse its discretion when it terminated Father's parental rights pursuant to Subsection (a)(8). Child has been in placement with DCSSCY since June of 2015, well beyond the twelve months contemplated by the statute. DCSSCY removed Child from Father because of Father's substance abuse and established an FSP for Father that required him to attend all meetings related to Child; notify DCSSCY of any change of address; undergo an assessment to determine whether he could safely care for Child; maintain employment and an appropriate residence for Child; and visit regularly with Child. Father failed to present any evidence that he addressed the issue of his substance abuse and the evidence presented by DCSSCY clearly demonstrates that Father failed to achieve any of his FSP goals. The conditions that led to Child's placement continue to exist.

In analyzing this matter as it relates to Child's best interests, it is plain that Father has had almost no contact with Child since Child's birth and we find no evidence in the record that there is a bond between Father and Child and we conclude that none exists. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citation omitted). The trial court did not abuse its discretion when it

determined that the termination of Father's parental rights pursuant to 23 Pa.C.S.A. §2511 (b) was in Child's best interests.

Finally, we address the change of the permanency goal for Child to adoption. Our standard of review in a dependency case follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for abuse of discretion[.] . . .

**In re L.Z.**, 111 A.3d 1164, 1174 (Pa. 2015) (citation omitted).

Regarding the disposition of a dependent child, the Juvenile Act, 42 Pa. C.S.A. §§ 6351(e), (f), (f.1) and (g), provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

When considering a petition for goal change for a dependent child, the trial court considers:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

**In re A.K.**, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S.A. § 6351(f)).

Additionally, Section 6351(f.1) requires the trial court to make a determination regarding the child's placement goal:

> **(f.1)     Additional     determination.—**Based     upon     the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> \*      \*      \*
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(2).

On the issue of a placement goal change, this Court has stated:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. **See In re Sweeney**, 574 A.2d 690, 691 (Pa. Super. 1990) (noting that "[o]nce a child is adjudicated dependent . . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S.A. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." **In re E.F.V.**, 461 A.2d 1263, 1267 (Pa. Super. 1983) (citation omitted). . . .

**In re K.C.**, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some citation formatting provided).

Here, the competent evidence in the record supports the trial court's change of permanency goal for Child to adoption as best suited to the safety, protection and physical, mental and moral welfare of the Child pursuant to the considerations set forth in the Juvenile Act, 42 Pa.C.S.A. § 6351.

Accordingly, we affirm the decree of the Court of Common Pleas of Dauphin County that terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b), and changed Child's goal to adoption pursuant to 42 Pa. C.S.A. § 6351. Therefore, we agree with counsel that Appellant's issue on appeal is "wholly frivolous." *In re S.M.B.*, *supra* at 1237. Additionally, we find no other non-frivolous issues that would merit relief.

Decree affirmed; application to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/01/2018