574 A.2d 690

**In the Interest of Laura SWEENEY.**

**Appeal of Verna THOMPSON.**

Superior Court of Pennsylvania.

Argued March 8, 1990.

Filed May 9, 1990.

Barbara J. Entwistle, Gettysburg, for appellant.

David K. James, Gettysburg, for appellee.

Chester G. Schultz, Gettysburg, for Adams County Children and Youth Services, participating party.

Before WIEAND, TAMILIA and POPOVICH, JJ.

TAMILIA, Judge:

This is an appeal from an Order entered July 6, 1989 which continued placement of appellant Verna Thompson's daughter, Laura L. Sweeney, in foster care and which adopted a long-range goal of adoption for the child, rather than reunification with appellant.

Laura Sweeney was born on May 31, 1983 and except for a three-month period in 1985–86, has been in foster care continuously since October 5, 1984, when appellant voluntarily relinquished custody to Adams County Children and Youth Services.[1] During the time Laura has been in foster care, the court conducted periodic review hearings, as required by the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.*, and each time the court concluded the conditions necessitating placement had not been alleviated. It is from the last of these hearings, July 5, 1989, and the subsequent Order, that the instant appeal stems.

Appellant first argues the trial court erred in applying the "best interests of the child" standard instead of the "clear and convincing evidence" standard in determining whether the placement goal should be changed. We disagree.

The standard for adjudicating a child dependent is "clear and convincing evidence", as well as a showing of clear necessity. *Helsel v. Blair County Children and Youth Serv.*, 359 Pa.Super. 487, 519 A.2d 456 (1986); 42 Pa.C.S. § 6341(c). Once a child is adjudicated dependent, however, the issues of custody and continuation of foster care are determined according to a child's best interests. *In Re Miller*, 380 Pa.Super. 423, 552 A.2d 261 (1988). In the instant case, appellant has not contested the dependency finding, and as Laura had been adjudged dependent prior

1. At the end of the three-month period, appellant, who was then residing in York County, relinquished custody to York County Children and Youth Services, whereupon the case was returned to the jurisdiction of Adams County.

to, and at the time of, the July 5, 1989 judicial review hearing, the trial court applied the proper standard in continuing Laura in foster care and modifying the long-range goal.

We also do not find the clear and convincing standard applicable to appellant's allegations the change in the long-term goal means appellant's "minimal visitation schedule" with Laura may be reduced. The trial court allayed these concerns at the last judicial review hearing.

> THE COURT: ... If we do change the goal plan, I will not be suspending visitation.... The visitation rights will have to be determined at a termination hearing. If the parent's rights are terminated that will take care of the visitation.

> \*　　\*　　\*　　\*　　\*　　\*

> THE COURT: What we're talking about right now is A, shall the child remain in placement. B, shall the goal, long range goal plan be changed.

N.T., 7/5/89, p. 21.

At such time as appellant's parental rights are subject to termination, the applicable evidentiary standard will be clear and convincing evidence. However, the situation is not presented instantly, and this claim is without merit.

■ Appellant next argues the facts and equities of the case do not support the conclusion reached by the trial court that the condition necessitating placement had not been alleviated, and that it would be contrary to the child's welfare to reunify her with her mother. Specifically, appellant argues the lack of housing which necessitated placement of Laura in foster care in 1984 is no longer a problem.

Review by the court is not limited to the original conditions or circumstances which necessitated placement. Sections 6351(f) and (g) of the Juvenile Act enumerate the determinations to be made by the court.

(f) Matters to be determined.—At each disposition review hearing, the court shall:

(1) determine the continuing necessity for and appropriateness of the placement;

(2) determine the extent of compliance with the service plan developed for the child;

(3) determine the extent of progress made toward alleviating the circumstances which necessitated the original placement;

(4) determine the appropriateness and feasibility of the current placement goal for the child; and

(5) project a likely date by which the goal for the child might be achieved.

**(g) Court order.**—On the basis of the determinations made under subsection (f) and other relevant evidence, the court, in addition, shall:

(1) determine whether the child:

(i) should be returned to the parents, guardian or other custodian;

(ii) should be continued in placement for a specified period; or

(iii) because of the child's special needs or circumstances, should remain in placement on a permanent or long-term basis; and

(2) order continuation, modification or termination of placement or other disposition best suited to the protection and physical, mental and moral welfare of the child.

42 Pa.C.S. §§ 6351(f), (g).

The trial court, within the exercise of its discretion, found, based on the record and the testimony presented on behalf of both Children and Youth Services and appellant, appellant had not cooperated with the family service plan and circumstances warranted the child's continued placement in foster care.

The court stated:

November, 1985 the Court Order was to return the child to the mother over objection by the way of Children's Services. That's in 1985. The child was with the mother

exactly three months. She then turned the child to the custody of the York County Children and Youth Services and then that agency transferred the case here. June, 1987 the mother agreed that the child should return, should remain in placement. December, 1987 neither parent appeared at the review hearing. June, 1988 we had the review hearing right after some domestic violence in Cumberland County in which the police were called and father at that time said that the parents were not ready for the child to be returned. Mother complained a little bit about the agency in Cumberland County but that was about it. December, 1988 which was the last review, the last visit was in July and it was said and not disputed that most of the visits that had been scheduled had been canceled [sic] by the mother. It was said at that time that the child was apprehensive about seeing the mother but there had been absolutely, really very little contact between mother and child.

We have today a statement that although mother was in jail she somehow feels that she was wrongfully deprived of the child's contact during jail. That's just not the law. We have had one overnight visit actually one overnight visit in a year. I have had this case for quite a few years. Mother had continually complained about lack of cooperation. She's indicated that she wants the child back but we're admonished by the Superior Court that long term foster placements are not to be tolerated. That there either should be reunification or adoption. I have said this to Mrs. Thompson on a number of occasions. It's obvious that the child is not—the interests of the child will not be promoted by a return home today. We have only had slight amount of visits. It would be contrary to the child's welfare. We have to do something. In that light the long term goal is going to be changed to adoption. The Court will not terminate the parents rights. We will wait until a termination hearing to decide that. If your client is more than just interested

in talking about reunification, then I would strongly suggest that she do something about it.

N.T., 7/5/89, pp. 76–78.

Therefore, after a careful, independent review of the record in this case, this Court finds no basis for interfering with the Order entered by the trial court, nor can we say the court abused its discretion in modifying the long-range goal. Moreover, we reject appellant's assertion that the trial court's reference to *In Re Quick* 384 Pa.Super. 412, 559 A.2d 42 (1989), with its notion of Permanency Planning, is inappropriate to the case sub judice.

Permanency Planning is a concept whereby children are not relegated to the limbo of spending their childhood in foster homes, but instead, dedicated effort is made by the court and the children's agency to rehabilitate and unite the family in a reasonable time, and failing in this, to free the child for adoption. *See* Adoption Assistance and Child Welfare Act of 1980, Public Law 96–272, June 17, 1980.

*Id.,* 384 Pa. Superior Ct. at 422, 559 A.2d at 47, footnote 2.

While not the sole consideration for the Juvenile Court Judge in determining the best interests of the child, we consider the concept of Permanency Planning an invaluable aid to those considerations, as evidenced by the able trial court herein.

Order affirmed.