J-S71032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.B., FATHER | No. 830 EDA 2016 |

Appeal from the Order Entered March 2, 2016
in the Court of Common Pleas of Philadelphia County Family Court
at No(s): CP-51-DP-0000433-2016
FID: 51-FN-393-2016

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED NOVEMBER 18, 2016**

E.B. ("Father") appeals from the order entered on March 2, 2016, in the Philadelphia County Court of Common Pleas Family Court, adjudicating dependent his daughter J.W. ("Child"), born in May of 1998,[1] and ordering

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that J.W. turned eighteen years of age in May 2016 and, in general, is not considered a "child" for purposes of dependency. **See** 42 Pa.C.S. § 6302. It is well settled that an actual claim must be present at all stages of the judicial process for the case to be actionable, however an exception can be made "where a party will suffer some detriment without the court's decision." **Pub. Defender's Office of Venango Cnty. v. Venango Cnty. Ct. of Common Pleas**, 893 A.2d 1275, 1279-80 (Pa. 2006) (citation omitted). In this case, J.W.'s dependency could be extended to age 21, if she were adjudicated dependent by the trial court prior to age 18. **See** 42 Pa.C.S. § 6302; § 6351. Therefore, the instant case is not moot because J.W. would suffer a detriment without the trial court's adjudication of dependency. **See Pub. Defender's Office of Venango Cnty.**, 837 A.2d at 1279-80. Further, the mootness exception is also applicable because E.B., as J.W.'s father, could suffer a detriment in any future proceedings with DHS should J.W. be declared dependent. **See In re D.A.**, 801 A.2d 614, 616-17 (Pa. Super. 2002).

that she remain in the care and custody of Department of Human Services

("DHS"). We affirm.

The trial court related the factual and procedural history as follows:

> [The dependency] petition was filed pursuant to an Order of Protective Custody ("OPC") obtained by DHS on February, 22, 2016.
>
> The previous involvement of DHS stemmed from August 4, 2012, when it received a Child Protective Services Report ("CPS") report alleging that [Child] had been the victim of sexual abuse by her former step-father, K.W., when she was between the age of nine (9) and twelve (12) years old. K.W. and J.W. ("Mother") were the caregivers of [Child] and her sibling. It was reported to DHS that [Child] disclosed the sexual abuse to [Mother]. The report further alleged that the abuse stopped after [Child] watched an episode of Special Victim's Unit, and informed K.W. that if he did not stop abusing her, she would report him to the police. Thereafter, K.W. stopped sexually abusing [Child]. The report was indicated.
>
> [Child] never received sexual abuse therapy.
>
> In August 2012, [Child] went to live with her maternal aunt, [T.W.].
>
> From November 2012 to June 2013, [Child] lived with [Father] in Harrisburg, Pa.
>
> Prior to age fourteen (14), [Child] had never spoken to or seen [Father].
>
> While living with [Father], [Child] did not perform well academically. [Child] was unable to participate in extracurricular activities, because she had to care for her nephew after school.
>
> Subsequently, [Child] ran away from [Father]'s home and walked to Hershey, [Pennsylvania], stating that she no longer desired to live with [Father] and wanted to return to [Mother]'s home.

On January 28, 2016, while residing with [Mother], [Child] voluntarily went to Pathways Youth Shelter ("PYS"), a program for children experiencing conflict with their parents, and [Child] was accepted into its twenty-one day program.

Consequently, on February 18, 2016, DHS received a General Protective Services Report ("GPS") which alleged that [Child] had been living at PYS for the last twenty-one (21) days and had reached the final day and could no longer remain at the shelter. It was alleged that [Mother] refused to allow her to return home and that [Child] did not initially want to return home. The report further alleged that [Father] had been notified; that he was willing to travel from Harrisburg to Philadelphia to pick up [Child], but that [Child] did not want to go with him; that she was on the honor roll at her high school and she wished to remain in Philadelphia to complete her senior year.

Subsequently, on February 19, 2016, DHS met with [Child] at PYS. [Child] expressed that she experienced a lot of conflict in her interactions with [Mother]. [Child] also reiterated to DHS that she did not want to go to Harrisburg to live with her father. Furthermore, [Child] told DHS that she did not want to return to [Mother]'s home. However, [Child] later retracted her statement and agreed to return home, if [Mother] decided to participate in therapy with her.

On February 19, 2016, [Father] travelled to Philadelphia to pick her up, but [Child] once again declined to go to Harrisburg with her father and returned to PYS instead.

On February 19, 2016, PYS agreed to allow [Child] to remain at the shelter until February 22, 2016.

Subsequently, on February 21, 2016, [F]ather visited [Child] at PYS and attempted to convince [Child] to return with him to Harrisburg, but [Child] still refused to go.

The following day, on February 22, 2016, DHS spoke with [Mother] who stated that [Child]'s choices were to go with [Father] to Harrisburg or to be placed in foster care.

As a result, DHS obtained the aforementioned Order of Protective Custody and placed [Child] in foster care through Turning Points for Children.

On February 24, 2016, a shelter care hearing was held before [the trial court] where [the trial court] ordered that the OPC be lifted and the child be temporarily committed to DHS.

Trial Ct. Op., 4/12/16, at 1-3 (unpaginated).

On March 2, 2016, a dependency hearing was held. At the hearing, Ms. Tara Fisher (a caseworker from DHS), Child, Mother, and Father testified. Following the hearing, the court adjudicated Child dependent and committed Child to the care and custody of DHS.

On March 15, 2016, Father timely appealed and filed a statement of errors complained of pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On appeal, Father raises the following issues:

Whether there were grounds for the adjudication of [dependency] of [] Child, as to the evidence having been sufficient to establish [Father] as unwilling or unable to care for [] Child?

Whether there was sufficient evidence to support the placement of [] Child into [DHS's] [c]ustody?

Father's Brief at 5.

Our Supreme Court set forth our standard of review for dependency cases as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to

accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

Section 6302 of the Juvenile Act defines a "dependent child" as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. **A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk**[.]

42 Pa.C.S. § 6302(1) (emphasis added).

In *In re G., T.*, 845 A.2d 870 (Pa. Super. 2004), this Court clarified the definition of "dependent child" further.

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (quotation marks and citation omitted); *see also In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010). "This Court has defined 'proper parental care' as 'that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.'" *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citation omitted). Additionally, the "burden of proof in a dependency proceeding is on the petitioner to

demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d at 872 (citation omitted).

With regard to a dependent child, in *In re D.A.*, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*Id.* at 617 (alteration in original and citation omitted).

Regarding the placement of a child who has been adjudicated dependent, this Court has explained:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, 393 Pa. Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent . . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of the Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re*

> ***E.F.V.***, 315 Pa. Super. 246, 461 A.2d 1263, 1267 (1983)
> (citation omitted).

***In re K.C.***, 903 A.2d 12, 14-15 (Pa. Super. 2006).

Instantly, after careful review of the parties' briefs, the certified record, and the trial court's opinion, we are satisfied that the record supports the trial court's findings, the findings support the trial court's conclusion that Child is dependent based upon a lack of parental care and control, and the placement of Child with DHS was necessary and appropriate for Child's well-being. Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016