J-S06031-18
J-S06032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.E.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | No. 2743 EDA 2017 |

Appeal from the Order Entered August 15, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): CP-51-AP-0000729-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: G.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | No. 2745 EDA 2017 |

Appeal from the Order Entered August 15, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): CP-51-DP-0002269-2013

J-S06031-18
J-S06032-18

IN THE INTEREST OF: G.E.R., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA
:
:
:
:
:
:
APPEAL OF: E.R., FATHER : No. 2747 EDA 2017

Appeal from the Order Entered August 15, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000729-2017,
CP-51-DP-0002269-2013

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 17, 2018**

R.S. ("Mother") and E.R. ("Father") appeal from the Decrees[1] granting

the Petitions filed by the Philadelphia Department of Human Services ("DHS"

or "the Agency") involuntarily terminating their parental rights to their minor

daughter, G.E.R., a/k/a G.M. ("Child") (born in February 2011), under the

Adoption Act, 23 Pa.C.S.A. § 2511, and changing the permanency goal for

Child to adoption under the Juvenile Act, 42 Pa.C.S.A. § 6351.[2]  We affirm.

In its Opinion, the trial court set forth the following factual and

procedural history:

---

[1] The trial court terminated the parental rights of Mother and Father in
separate Decrees.  Because these consecutively-listed appeals arise from the
same set of facts and raise similar challenges to the Decrees, we consolidated
the appeals for disposition.

[2] The trial court also terminated the parental rights of any unknown father to
Child.  No such unknown father has filed an appeal from the termination of his
parental rights, nor is any such individual a party to the present appeal.

- 2 -

On May 25, 2013, the family became known to [DHS] through a General Protective Services (GPS) report alleging that Child's older sibling was being sexually inappropriate with a younger sibling. The GPS Reports also alleged that Mother had substance abuse issues. (Statement of Facts: Petition to Terminate Parental Rights Paragraph A). DHS later learned that on February 11, 2013, Father was arrested and charged with Aggravated Assault, Simple Assault, and Recklessly Endangering Another Person. (Statement of Facts: Petition to Terminate Parental Rights Paragraph B).

On October 3, 2013, the Community Umbrella Agency ("CUA")[] visited the family home. During this visit, testimony revealed that Mother was impatient with Child and her siblings and easily agitated by them. (Statement of Facts: Petition to Terminate Parental Rights Paragraph I). Thereafter, from October 4, 2013 through October 8, 2013, Mother was hospitalized at Temple University Hospital for mental health treatment. (Statement of Facts: Petition to Terminate Parental Rights Paragraph J). After Mother left the hospital, CUA learned that Mother was addicted to phencyclidine ("PCP")[,] that Mother sold her food stamps for drugs[,] that Mother was selling drugs from her home[,] and that Child's other siblings were truant at school. (Statement of Facts: Petition to Terminate Parental Rights Paragraph M).

On October 18, 2013, CUA contacted the father of Child's siblings and requested that he remove his children from Mother's home. [Child] remained with Mother at her home. (Statement of Facts: Petition to Terminate Parental Rights Paragraph AP). Thereafter, DHS learned that Father [] was convicted of the aforementioned crimes and sentenced to one and a half to three years [of] incarceration followed by three years [of] probation. (Statement of Facts: Petition to Terminate Parental Rights Paragraph S).

On November 14, 2013, DHS filed an urgent dependency [P]etition on behalf of Child. The adjudicatory hearing was held on November 22, 2013, before the Honorable Jonathan Irvine[,] who adjudicated Child dependent and committed Child to DHS. It was reported to the [c]ourt that Father was incarcerated at the State Correctional Institute at Houtzdale. (Statement of Facts: Petition to Terminate Parental Rights Paragraph U).

Throughout the involvement of the DHS/CUA, the court held regularly scheduled Permanency Review hearings to monitor the family's compliance with all court orders and the Single Case Plan ("SCP"). (Statement of Facts: Petition to Terminate Parental Rights Paragraph W). Throughout CUA's involvement, regularly scheduled SCP meetings were held to assist the family with meeting all objectives and to provide any and all appropriate services as an aid to facilitate reunification. (Statement of Facts: Petition to Terminate Parental Rights Paragraph X).

On May 3, 2017, CUA held [an] SCP meeting. The parental objectives identified for Mother were (1) to work toward achieving stability; (2) to be complaint [*sic*] with random drug screens; (3) to re-engage in substance abuse treatment; (4) to comply with mental health treatment and all other related services; (5) to comply with weekly supervised visits at the provider agency; (6) to refrain from using any illegal substance; and (7) to participate in parenting classes. [The parental objectives identified for Father were (1) to comply with prisons facility regulations and programs; (2) to comply with prison visits with [Child]; and (3) to provide CUA with proof concerning the completion of parenting classes and substance abuse treatment. (Statement of Facts: Petition to Terminate Parental Rights Paragraph LL).]

Trial Court Opinions (Mother and Father), 10/11/17, at 2-4 (footnotes omitted).

On July 17, 2017, DHS filed a Petition to change the permanency goal for Child to adoption. Moreover, on July 18, 2017, DHS filed a Petition to involuntarily terminate the parental rights of Mother and Father to Child. On August 15, 2017, the trial court held a hearing on the termination and goal change Petitions. Mother and Father were present at the hearing. They were represented by separate counsel, who were also present. Lee Kuhlmann, Esquire, was present as the guardian *ad litem* for Child, as was the Child Advocate, Michael Graves, Esquire. DHS presented the testimony of Shaniqua

Thomas ("Thomas"), the CUA, Case Manager, and Reynaldo Dabina, the CUA case aide. *See* N.T., 8/15/17, at 3.

After the hearing, on August 15, 2017, the trial court involuntarily terminated the parental rights of Mother to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), and (b); and of Father to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b); and changed Child's goal to adoption, pursuant to 42 Pa.C.S.A. § 6351.

Father and Mother each filed timely Notices of Appeal, along with Concise Statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issues:

1. Did the [t]rial [c]ourt commit reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 P[a].C.S.A. §[]2511(a)(1), (2), (5) and (8)?

2. Did the [t]rial [c]ourt commit reversible error, when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the … developmental, physical and emotional needs of [C]hild[,] as required by the [A]doption [A]ct, 23 P[a].C.S.A.[]§[]2511(b)?

3. Did the [t]rial [c]ourt commit reversible error, when it terminated Mother's parental rights and changed [C]hild's goal to adoption[,] as substantial, sufficient, and credible evidence was presented at the time of trial which would have substantiated denying the Petition for Goal Change?

Mother's Brief at 4.

On appeal, Father raises the following issues:

- 5 -

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, [] pursuant to 23 Pa.C.S.A. [§] 2511(a)(1)[,] where Father presented evidence that he tried to perform his parental duties while he was incarcerated[?]

2 Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, [] pursuant to 23 Pa.C.S.A. [§] 2511(a)(2)[,] where Father presented evidence that he has remedied his situation by taking parenting and anger management counselling and has the present capacity to care for [] [C]hild once he is released from prison[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father and changing the goal to adoption, pursuant to 23 Pa.C.S.A. [§] 2511(b)[,] where evidence was presented that established [that Child] had a close bond with [] Father. Additionally, Father consistently visited with [] [C]hild and had continuous telephone contact with [] [C]hild for the entire time [] [C]hild was in placement. Furthermore, **no** evidence was presented to show it was in [] [C]hild's best interest to be adopted. In fact, [] [C]hild was just moved to a new foster home after spending 40 plus months in a kinship care foster home of the paternal grandmother[?]

Father's Brief at 7 (emphasis in original).

Mother and Father each challenge the sufficiency of the evidence presented by the Agency. *See* Mother's Brief at 9-17; Father's Brief at 12-16. Additionally, Mother and Father each assert that the trial court erred in changing Child's permanency goal from reunification to adoption. *See* Mother's Brief at 17-18; Father's Brief at 7.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a

- 6 -

petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). With regard to the termination of both Mother's and Father's parental rights, we will consider section 2511(a)(2) and (b). Section 2511 provides, in relevant part, as follows:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Regarding a parent's incarceration, our Supreme Court has instructed that

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and [] the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 828. Further, "incarceration neither compels nor precludes termination of parental rights." *Id.*

The focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the

- 9 -

evidence in support of termination under section 2511(b), our Supreme Court

has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S.[A.] § 2511(b).  The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability."  ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012).  In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.  ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use

expert testimony.  Social workers and caseworkers can offer evaluations as

well.  Additionally, section 2511(b) does not require a formal bonding

evaluation."  ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal

citations omitted).  Although it is often wise to have a bonding evaluation and

make it part of the certified record, "[t]here are some instances … where direct

observation of the interaction between the parent and the child is not

necessary and may even be detrimental to the child."  ***In re K.Z.S.***, 946 A.2d

753, 762 (Pa. Super. 2008).

"[A] parent's basic constitutional right to the custody and rearing of …

her child is converted, upon the failure to fulfill … her parental duties, to the

child's right to have proper parenting and fulfillment of [the child's] potential

in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." ***In re Adoption of C.L.G.***, 956 A.2d at 1007 (citing ***In re Z.S.W.***, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

With regard to the argument that the trial court improperly terminated the parental rights of Mother and Father because the evidence did not support a finding that the requirements of section 2511(a) and (b) were met, the trial court stated the following:

> Child was adjudicated dependent on November 22, 2013. The record demonstrates an ongoing unwillingness of Father and Mother to provide care or control for [] Child or to perform any parental duties[,] and her failure to remedy the conditions that brought [] Child into care. The documents and testimony discussed below provided the [c]ourt clear and convincing evidence that termination of parental rights of [] Father and Mother would be in the best interests of [] Child.

Trial Court Opinion (Mother), 10/11/17, at 5-6.

With regard to Mother, the trial court stated as follows:

[The trial c]ourt found clear and convincing evidence to terminate the parental rights of [] Mother pursuant to 23 Pa.C.S.A. §[] 2511(a)[(2)] … and 23 Pa.C.S.A. § 2511(b).

Throughout the involvement of the DHS/CUA, the court held regularly scheduled Permanency Review hearings to monitor the family's compliance with all court orders and [SCP]. (Statement of Facts: Petition to Terminate Parental Rights Paragraph W). Throughout CUA's involvement, regularly scheduled SCP meetings

were held to assist the family with obtaining all objectives and to provide any and all appropriate services as an aid to facilitate reunification. (Statement of Facts: Petition to Terminate Parental Rights Paragraph X). On May 3, 2017, CUA held a SCP meeting. The parental objectives identified for Mother were (1) to work toward achieving stability; (2) to be compliant with random drug screens; (3) to re-engage in substance abuse treatment; (4) to comply with mental health treatment and all other related services; (5) to comply with weekly supervised visits at the provider agency; (6) to refrain from using any illegal substance; and (7) to participate in parenting classes.

[Thomas] testified that Mother had failed to meet her SCP objectives throughout the history of [] Child's case. [Thomas] testified that Mother's main SCP objectives were to refrain from illegal substance abuse, to comply with visitation schedules, to re-engage with mental health and drug treatment and to comply with court-order[ed] random drug testing. (N.T. August 15, 2017 Page 20). [Thomas] testified that Mother failed to maintain sobriety and had not taken part in mandatory drug treatment from August 2016 through July 28, 2017[.] (N.T. August 14, 2017 Page 19-20). [Thomas] also testified that Mother was not compliant with mental health treatment and that she had not taken part in mandatory mental health treatment from August 2016 through July 28, 2017. (N.T. August 14, 2017 Page 21). [Thomas] testified that Mother brought third parties to visitations[,] which was against visitation rules[,] and that[,] during visits[,] Mother told Child to not obey her caregivers. (N.T. August 14, 2017 Page 23). Mother's failure to remain sober, to attend mental health treatment and to visit [] Child in a constructive fashion demonstrated that Mother had not reached her SCP objectives.

As to the current foster home, [Thomas] testified that Child's foster parents had met [] Child's needs and that [] Child was safe[,] and that[,] once [] Child was freed for adoption[,] additional resources would be available for pre-adoptive services. (N.T. August 14, 2017 Page 23). [Thomas] also testified that the termination of [] Mother's parental rights would not cause irreparable harm to [] Child. (N.T. August 14, 2017 Page 26). The testimony of [Thomas] was deemed to be credible and accorded great weight.

Based upon this testimony[,] as well as documents entered into evidence, [the trial court] found clear and convincing

- 12 -

evidence to terminate parental rights of Mother pursuant to 23 Pa.C.S.A. §[] 2511(a)[(2)] …[,] as she had failed to remedy the conditions that brought the Child into care based upon each her unwillingness to cooperate with social services and mental health treatment.  The [c]ourt also found that the termination of the [m]other's parental rights would be in the best interest of[] Child pursuant to 23 Pa.C.S.A. § 2511(b).

**CONCLUSION**

[The trial court], after careful review of the findings of fact and the testimony presented during the Termination Hearing on August 15, 2017, finds clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.[A. §] 2511(a)[(2)] ….   [The trial] court further finds pursuant to 23 Pa.C.S.[A. §] 2511(b), termination of Mother's parental rights would not have a detrimental effect on []the Child and would be in [] Child's best interest.  …

Trial Court Opinion (Mother), 10/11/17 at 5-9 (footnotes omitted).

With regard to Father, the trial court stated the following:

[The trial c]ourt found clear and convincing evidence to terminate the parental rights of [] Father pursuant to 23 Pa.C.S.A. §[] 2511(a)[(2)] and 23 Pa.C.S.A. § 2511(b).

Throughout the involvement of the DHS/CUA, the court held regularly scheduled Permanency Review hearings to monitor the family's compliance with all court orders and the [SCP]. (Statement of Facts: Petition to Terminate Parental Rights Paragraph W).  Throughout CUA's involvement, regularly scheduled SCP meetings were held to assist the family with obtaining all objectives and to provide any and all appropriate services as an aid to facilitate reunification. (Statement of Facts: Petition to Terminate Parental Rights Paragraph X).  On May 3, 2017, CUA held a SCP meeting….  The parental objectives identified for Father were (1) to comply with prisons facility regulations and programs; (2) to comply with prison visits with [Child]; and (3) to provide CUA with proof concerning the completion of parenting classes and substance abuse treatment. (Statement of Facts: Petition to Terminate Parental Rights Paragraph LL).

- 13 -

[Thomas] testified that Father had failed to meet his SCP objective[s] throughout the history of [] Child's [c]ase. [Thomas] testified that these SCP objectives were (1) to complete parenting classes and (2) drug and alcohol treatment. (N.T. August 14, 2017 Page 25). [Thomas] testified that Father had not provided verification that he had taken parenting classes or that he had completed drug and alcohol treatment. (N.T. August 14, 2017 Page 29) despite the fact he had been incarcerated for four years [*sic*]. [Thomas] testified that Father had been incarcerated throughout [] Child's life and that [] Child had never lived with [] Father. (N.T. August 14, 2017 Page 31-32). [Thomas] testified that Father had given no indication that there was appropriate housing for Father or Child in the event Father was released from prison. (N.T. August 14, 2017 Page 23).

As to the current foster home, [Thomas] testified that Child's foster parents had met [] Child's needs and that [] Child was safe[,] and that[,] once [] Child was freed for adoption[,] additional resources would be available for pre-adoptive services. (N.T. August 14, 2017 Page 23). [Thomas] was deemed to be credible and accorded great weight. Based upon this testimony elicited at the Termination Hearing[,] as well as the documents in evidence, [the trial court] found clear and convincing evidence to terminate [the] parental rights of [] Father pursuant to 23 Pa.C.S.A. §[] 2511(a)[(2),] as he had failed to remedy the conditions that brought [] Child into care[,] based upon his unwillingness to cooperate with services offered to complete his objectives in prison. The [trial court] also found that the termination of [] Father's parental rights would be in the best interest of [] Child pursuant to 23 Pa.C.S.A. § 2511(b).

## CONCLUSION

[The trial court], after careful review of the findings of fact and the testimony presented during the Termination Hearing on August 15, 2017, finds clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.[A. §] 2511(a)[(2)]. [The trial] court further finds[,] pursuant to 23 Pa.C.S.[A. §] 2511(b), termination of Father's parental rights would not have a detrimental effect on [] Child and would be in [] Child's best interest. …

Trial Court Opinion (Father), 10/11/17 at 5-8 (footnotes omitted).

After a careful review of the record, we agree with the trial court's determinations as to both Mother and Father, and discerning no abuse of discretion or error of law, we affirm on this basis as to Mother's and Father's arguments concerning the sufficiency of the evidence presented by the Agency. *See* Trial Court Opinion (Mother), 10/11/17 at 5-9; Trial Court Opinion (Father), 10/11/17 at 5-8.

Finally, we address the change of the permanency goal for Child to adoption.[3] Our standard of review in a dependency case is as follows:

> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. … When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support the opposite result.

*In re N.C.*, 909 A.2d 818, 822-23 (Pa. Super. 2006) (citations and quotation marks omitted).

> Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act[,] 42 Pa.C.S.[A.] §§ 6301-65, which was amended in 1998 to conform to the federal Adoption and Safe Families Act []. The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment.

---

[3] We observe that Father did not support his challenge to the change of Child's permanency goal to adoption with any discussion in his brief. *See* Pa.R.A.P. 2119(a). However, we will address the change as it relates to both parents.

*In re A.B.*, 19 A.3d 1084, 1088 (Pa. Super. 2011) (citation and brackets

omitted).

On the issue of a placement goal change, this Court has stated as

follows:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. ***See In re Sweeney***, 393 Pa. Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent … the issues of custody and continuation of foster care are determined by the child's best interests").  Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter."  42 Pa.C.S.[A.] § 6301(b)(1.1).  Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child."  ***In re E.F.V.***, 315 Pa. Super. 246, 461 A.2d 1263, 1267 (1983) (citation omitted).

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006); *see also In the Matter

of S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (stating that "[s]afety,

permanency, and well-being of the child must take precedence over **all** other

considerations." (citation omitted; emphasis in original)).

Upon review, we conclude that competent evidence in the record

supports the trial court's change of permanency goal for Child to adoption.

Having already determined that it is in Child's best interest to terminate

Mother's and Father's parental rights, we also agree that it is in Child's best

interest to change Child's permanency goal to adoption.

Decrees affirmed.

J-S06031-18
J-S06032-18

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/17/18</u>

- 17 -