J-S56003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1689 EDA 2019 |

Appeal from the Order Dated May 31, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-DP-0002597-2018

BEFORE:  PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.:               **FILED JANUARY 28, 2020**

K.D. ("Mother") appeals from the May 31, 2019 order, adjudicating dependent her child, K.B. (a male born in November of 2018) ("Child"), under the Juvenile Act,[1] based on present inability with aggravating circumstances as to Mother, and, as a disposition under 42 Pa.C.S.A. § 6351, ordering Child remain as committed to the Philadelphia Department of Human Services ("DHS"). Based on the following, we affirm.

The trial court set forth the facts and procedural history as follows:

> The Child is approximately one and a half years old and has been in that particular placement since December 5, 2018. [DHS] had previously become aware of Mother when they became involved with her two other children. Mother has had a long history with mental health and substance abuse issues. As a result of Mother's untreated mental health and drug issues, Mother's rights

---

[1]  42 Pa.C.S.A. § 6301, *et seq*.

were involuntarily terminated with respect to the Child's two other siblings.

In the present case, DHS became aware of the Child in December 2018 when it received a report alleging Mother tested positive for oxycontin, marijuana, Xanax, and [phencyclidine ("PCP")] at the birth of the Child. Mother "inconsistently admitted" to using oxycontin for back pain medication but denied using any other substances during her pregnancy even though she tested positive for oxycodone and PCP at a prenatal appointment in August 2018. Ultimately, the report was determined to be valid and as a result, the Child was removed from Mother's home. At a shelter care hearing held for the Child on December 7, 2018, this Court granted temporary legal custody of the Child to DHS and placed the Child in Northeast Treatment Center ("NET") foster home.

On May 31, 2019,[2] the Child was adjudicated dependent and committed to the DHS due to the fact that the Child was "without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." This Court further found that, based on abuse, neglect, and dependency of the Child, it is in the best interest of the Child to be removed from Mother's care.

Brendetta White, the Community Umbrella Agency ("CUA") case manager, testified that one of Mother's objectives included drug and alcohol treatment. Mother was also referred to the Clinical Evaluation Unit ("CEU") for Assessment, forthwith Full Drug and Alcohol Screen Dual Diagnosis, and three "randoms". Mother was also referred to CEU for a forthwith and three "randoms" on February 15, 2019. However, DHS only has a report from one random on [April 23, 2019] in which she tested positive for [PCP]. Ms. White testified that Mother signed a medical records release for Gaudenzia[3] on [May 30, 2019], but Gaudenzia would not provide Ms. White with Mother's information prior to having that authorization. Mother testified that she attends therapy on

_____

[2] At the May 31, 2019 hearing, Mother and Father were both present with counsel and testified on their own behalves. Child was not present but was represented by legal counsel, a child advocate.

[3] Gaudenzia provides drug treatment services. **See** N.T., 5/31/2019, at 28.

Monday, Wednesday, and Friday, but offered no proof. Ms. White also testified that Mother and Father live together. Ms. White also stated that the home Mother and Father share together is appropriate but that she would have concerns returning the Child due to Mother's mental health and drug and alcohol problems.

Based on the foregoing testimony, this Court issued a decree keeping legal custody with DHS and ordered that the Child remain as committed. This Court further adjudicated dependency based on present inability and found aggravated circumstances with respect to Mother.

Trial Court Opinion, 7/22/2019, at 1-3 (record citations omitted). Mother filed this timely appeal.[4]

Mother raises the following issues:

1. Did [DHS] sustain the burden that [C]hild should be adjudicated dependent based on present inability?

2. Was there … sufficient evidence presented to establish that it was in the best interest to be adjudicated dependent and removed from the home of the Mother?

Appellant's Brief, at 6.[5]

Our standard of review in dependency cases is abuse of discretion. **See**

**In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010). "An abuse of discretion is not

_____

[4] Although still represented by appointed counsel, Mother filed a *pro se* notice of appeal and docketing statement on June 19, 2019. This Court issued a rule to show cause, directing the Prothonotary to enter Mother's counsel on the docket and provide counsel with a copy of Mother's *pro se* appeal and exit a docketing statement for completion. Additionally, counsel was ordered to file and serve a statement of errors pursuant to Pa.R.A.P. 1925(b). Counsel complied with this Court's request on July 11, 2019. On July 22, 2019, the trial court issued an opinion under Pa.R.A.P. 1925(a).

[5] Father is not a party to the appeal.

merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." ***Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa. Super. 2007) (citations omitted).

> We accept the trial court's factual findings that are supported by the record, and defer to the court's credibility determinations. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule [the trial court's] findings if they are supported by competent evidence.

***In re R.P.***, 957 A.2d 1205, 1211 (Pa. Super. 2008) (citations and quotations omitted) (brackets in original). This Court is not bound by the trial court's inferences or conclusions of law. ***R.J.T.***, 9 A.3d at 1190.

Section 6302 of the Juvenile Code defines a "dependent child," in relevant part, as one who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302. This Court has clarified the definition of "dependent child" further as follows:

The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004) (internal quotations and citations omitted).

A child is also deemed dependent if he is "born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child." 42 Pa.C.S.A. § 6302. "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *G., T.*, 845 A.2d at 872 (citation omitted).

"Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or

transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

***In re D.A.***, 801 A.2d 614, 617 (Pa. Super. 2002) (*en banc*) (citation omitted).

Lastly, we note:

Section 6341(c.1) of the Juvenile Act states that if the court makes a finding of dependency,

> the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home[,] or to preserve and reunify the family[,] shall be made or continue to be made[,] and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

42 Pa.C.S. § 6341(c.1). Further, a finding of aggravated circumstances may be made where "[t]he parental rights of the parent have been involuntarily terminated with respect to a child of the parent." 42 Pa.C.S. § 6302(5).

***In the Interest of S.U.***, 204 A.3d 949, 965 (Pa. Super. 2019) (*en banc*).

First, Mother claims DHS failed to establish by clear and convincing evidence that Child should be adjudicated dependent under Section 6302. ***See*** Appellant's Brief, at 9. Specifically, she states:

> In the instant case, [M]other admitted that she had a prior mental health history. However[,] the worker could not confirm or deny whether [M]other was in treatment.

> There was no evidence to suggest that [M]other's home was inappropriate. There was no evidence to indicate that [M]other was unemployed or could otherwise not care for her children. Therefore, [DHS] did not meet its burden by clear and convincing evidence that Mother was presently unable to care for her child.

***Id.***, at 10.

In support of its dependency determination, the trial court explained its rationale as follows:

> In the present case, Mother cannot provide adequate care to Child as Mother has struggled with substance abuse issues for many years. This substance abuse ultimately led to an involuntary termination of Mother's rights with respect to two of her other children on October 20, 2017[,] which is within the three year requirement under 23 Pa.C.S. § 2511. (Judge Daine Grey's Ct. Order 10/20/17 at 1.) Additionally, when the Child was born [i]n November [of] 2018, Mother tested positive for oxycontin, marijuana, Xanax, and PCP. Therefore, this Court did not err in adjudicating the Child dependent since Mother's use of a controlled substance is a factor that places the health, safety, or welfare of a child at risk. Moreover, this Court properly adjudicated Child dependent since Mother's rights were involuntarily terminated with respect to her two other children less than three years prior to the birth of the Child.

Trial Court Opinion, 7/22/2019, at 4-5 (citation omitted).

We reject Mother's argument that DHS failed to establish by clear and convincing evidence that Child should be adjudicated dependent. While there was no evidence regarding Mother's employment status or that her home was inappropriate, a review of the record establishes Mother's unresolved mental health issues and persistent drug use, both of which placed the Child's health, safety, and welfare at risk pursuant to Section 6302.[6]

With respect to Mother's assertion that she confirmed her mental health history and DHS could not confirm or deny Mother was in treatment, we note

---

[6] Additionally, it merits mention that Mother resides with Father, who has his own mental health and drug concerns. *See* N.T., 5/31/2019, at 12, 31-36. The trial court indicated it did not find Father's testimony credible. *See id.*, at 39.

- 7 -

the CUA case manager testified Mother signed the Gaudenzia release form one day prior to the hearing. N.T., 5/31/2019, at 23-24. Consequently, the case manager was not able to obtain that information prior to the hearing. Nevertheless, Mother testified she went to Gaudenzia "Monday, Wednesday and Friday except for Monday on [her] visits or when [she] can make it there[.]" *Id.*, at 28. She did not provide any written documentation of her attendance at Gaudenzia at the dependency hearing. *See id.* As none of Mother's testimony negates the court's finding that Mother still struggles with drug addiction, we cannot determine that the court abused its discretion on this issue.

Mother also ignores the finding of aggravated circumstances, in which Mother's parental rights had been involuntarily terminated with respect to two of her other children within the last three years. Therefore, we agree with the trial court that there was sufficient evidence to support its finding that the removal of Child from parental care was properly based on Mother's present inability, along with aggravated circumstances. Accordingly, her first argument is unavailing.

Next, Mother complains DHS failed to establish by clear and convincing evidence that it is in the best interest of Child to be removed from the home. *See* Appellant's Brief, at 10. She states there was no evidence presented as to the best interest of Child or that Mother lacked proper parental care or control. *See id.*, at 11.

Keeping the above-stated dependency principles in mind, we are also guided by the following:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. ***See In re Sweeney***, 393 Pa. Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent ... the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of the Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." ***In re E.F.V.***, 315 Pa. Super. 246, 315 Pa. Super. 246, 461 A.2d 1263, 1267 (1983).

***In re K.C.***, 903 A.2d 12, 14-15 (Pa. Super. 2006). ***See also In re J.J.***, 69 A.3d 724, 732 (Pa. Super. 2013).

> Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.

***In re G. (Appeal of S.S.)***, 845 A.2d 870, 873 (Pa. Super. 2004) (citations and quotation marks omitted; brackets in original). Lastly, "[i]t is the duty of the trial court to determine whether the non-custodial parent is capable and willing to render proper parental control prior to adjudicating a child dependent." ***In re M.L.***, 757 A.2d 849, 851 (Pa. 2000).

Here, the trial court explained its rationale for adjudicating Child dependent based on findings of abuse, neglect, or dependency, and that it

was in the best interests of Child to remove him from Mother's home as follows:

> In the [present] case, this Court had already involuntarily terminated Mother's rights with respect to two of her other children because [of] Mother's drug abuse. At that time, Mother had been diagnosed with schizophrenia and bipolar disorder, but was not taking medication to regulate her mental health. To date, there has been no evidence that Mother has taken any steps to remedy this situation. Additionally, Mother has been noncompliant in completing her objectives. This Court ordered Mother to CEU for three "randoms" and was referred to CEU. However, DHS only received one report from Mother's random on [April 23, 2019] in which she tested positive for PCP. Additionally, she only signed the medical authorization release form for Gaudenzia who she claims provided her Outpatient Dual Diagnosis Treatment one day prior to the adjudication. Consequently, the DHS worker had no way of confirming Mother's progress or attendance. Although Mother claims she goes to therapy three times a week, Mother provided no proof that she received ongoing treatment.

> Furthermore, Ms. White stated that she would have concerns returning the Child to Mother due to Mother's mental health and drug … problems. As a result of [M]other's continued drug use and non-compliance in completing her objectives, this Court properly adjudicated Child dependent and was justified in removing Child from Mother's home.

Trial Court Opinion, 7/22/2019, at 1-3 (record citations omitted). We conclude that the trial court's analysis is thoroughly supported by the record. Further, the court's reasoning does not constitute an error of law or an abuse of discretion. Accordingly, Mother's second issue does not merit relief.

Finally, at the May 31, 2019 dependency hearing, the testimony established Father, as the non-custodial parent, was not capable and willing to render proper parental control based on the following: (1) Father has a drug history and was non-compliant with his requested drug screening tests,

*see* N.T., 5/31/2019, at 22-23; (2) Father had previously been involuntary committed for mental illness, *see id.*, at 35 (Father stating, without further elaboration, he was committed for "seeing" his ex-wife's name); (3) Mother expressed concerns regarding Father's mental health, including anger issues, *see id.*, at 30 ; and (4) Father works six days a week, 11 hours a day, as a laborer and would not be able to care for Child, *see id.*, at 37.[7]  Therefore, in addition to Mother lacking proper parental care or control, Father was not available and capable of providing care to Child, and therefore, it was in Child's best interest to remove him from the home.

Based on the foregoing, we affirm the trial court's adjudicatory and dispositional order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/20

---

[7]  Father indicated his sister and aunt would be able to take of Child, but, as noted above, the court did not find Father's testimony credible. *See id.*, at 39.

- 11 -