J-S09015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF L.R.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L.S., BIOLOGICAL | : | |
| MOTHER | : | No. 1625 MDA 2017 |

Appeal from the Decree and Order Entered May 18, 2017
in the Court of Common Pleas of Dauphin County
Orphans' Court at Nos.: 25-AD-2017
CP-22-DP-0000264-2015

BEFORE: GANTMAN, P.J., McLAUGHLIN, AND PLATT*, JJ.

MEMORANDUM BY PLATT, J.:                    **FILED JULY 12, 2018**

S.L.S. (Mother) appeals the decree and order of the Court of Common Pleas of Dauphin County (trial court), entered May 18, 2017, that involuntarily terminated her parental rights to her daughter, L.R.S. (Child) (born in October of 2015), under the Adoption Act, 23 Pa.C.S.A. § 2511, and changed Child's goal to adoption under the Juvenile Act, 42 Pa.C.S.A. § 6351.  We affirm.

Child was placed in the neonatal intensive care unit after she was born when she tested positive for cocaine, methadone, and PCP.  (**See** N.T. Hearing, 5/18/17, at 24).  When the hospital discharged Child in October of 2015, Dauphin County Children and Youth Services (CYS) placed her in foster care.  (**See id.** at 14, 25).

Mother appeared at a shelter care hearing on October 22, 2015, under the influence of drugs.  The trial court continued the hearing when Mother

---

* Retired Senior Judge assigned to Superior Court.

refused a drug screen. (*See id.* at 41). Mother appeared under the influence at the re-scheduled hearing on October 27, 2015. (*See id.*). On the day Child was adjudicated dependent, November 9, 2015, Mother tested positive for cocaine and methadone. (*See id.* at 28).

CYS obtained court authorization for Child to participate in early intervention services in December of 2015, when CYS could not locate Mother. (*See id.* at 50-51).

Mother was incarcerated from December 22, 2015, to February 22, 2016. (*See id.* at 51).[1] Mother's first visit with Child occurred on April 11, 2016. (*See id.* at 30). Mother had her second visit on April 18, 2016. (*See id.*). Mother did not see Child again until October 3, 2016. (*See id.* at 32).

On May 24, 2016, the trial court found aggravated circumstances against Mother because of her lack of sustained contact with Child. (*See id.* at 25-26). During the nearly nineteen months Child has been in foster care, Mother has chosen to visit with her only ten times. (*See id.* at 39).

At the time of the hearing, Mother was thirty-two years old. She admitted to CYS that she has used drugs since she was nineteen. (*See id.* at 85). To address her substance abuse, Mother was required to provide CYS with three drug screens per week. (*See id.* at 42). When CYS filed its petition to terminate Mother's parental rights, Mother had provided thirty of the

---

[1] Our review of the record reveals that Mother's short period of incarceration was not a material contributing factor to the conditions that led to the removal of Child from her care.

required 217 drug screens. (*See id.* at 43). CYS assumes that missed screens are positive. (*See id.* at 44). Mother was in the Suboxone program at the Discovery House, a methadone maintenance facility, but had not completed that program and was, therefore, unable to begin drug-free counseling. (*See id.* at 103-04).

Mother began treatment for her mental health concerns in March of 2016. (*See id.* at 68, 137). From March 2016 through April 2017, Mother attended six of twelve scheduled appointments. (*See id.* at 68). Mother was unsuccessfully discharged from mental health case management services through the Case Management Unit (CMU). (*See id.* at 69). Mother testified that she re-started services through CMU the week prior to the termination hearing to assist her with housing. (*See id.* at 136-37).

Mother was on probation because of a felony possession with intent to deliver conviction and a misdemeanor terroristic threats conviction. (*See id.* at 87). Mother's probation officer testified that Mother had been employed, but had lost her employment. (*See id.* at 90). Mother never provided CYS with any documentation of employment. (*See id.* at 70).

One of Mother's service objectives was to complete a parenting education program. (*See id.* at 65). Mother did not complete such a program. (*See id.* at 65-66).

Mother has moved at least four times since Child came into care. (*See id.* at 55). At the time of the hearing, Mother was residing in a shelter at the

YWCA. (*See id.*). Mother testified that she knew she was not currently stable and was not asking to have the child returned to her. (*See id.* at 143).

At the time of the hearing, on May 18, 2017, Child had been in foster care for just one day shy of nineteen months. (*See id.* at 14). During that time, her foster parents have provided for all her needs. (*See id.* at 15-16). Child maintains contact with an older brother, who was adopted by friends of the foster family.[2] (*See id.* at 14). Child is bonded with other children in her foster family, and she calls her foster parents "Mommy" and "Daddy." (*Id.* at 15). Child runs to the window when her foster father comes home from work, saying, "Daddy, Daddy, Daddy." (*Id.*). Mother testified that the foster parents are, "really good parents for my daughter," who "could probably take care of her a lot better than me." (*Id.* at 143).

Visits with Mother have only made up seven ten-thousandths (0.0007) of Child's life. (*See id.* at 115). Dr. Howard Rosen, a psychologist, testified that Mother is "really not much removed from a total stranger that we could find on the street." (*Id.*).

CYS filed its petition to change Child's goal to adoption and to terminate Mother's parental rights involuntarily on March 24, 2017. The trial court held a hearing on that petition on May 18, 2017, at which Child was represented by separate legal counsel and a guardian *ad litem*, and entered the

---

[2] Mother has six other children; none of them are in her care. (*See id.* at 49).

termination/goal change decree and order on that same day.[3]  Mother filed an untimely appeal on June 20, 2017, that this Court quashed.  The trial court granted Mother *nunc pro tunc* relief on October 11, 2017.  Mother filed a timely appeal and concise statement of errors complained of on appeal on October 19, 2017.  The trial court entered its opinion on November 21, 2017.  **See** Pa.R.A.P. 1925.

Mother presents the following issues for our determination:

1. [Whether the trial c]ourt erred as a matter of law and abused its discretion in changing the goal for [Child] to adoption and terminating [Mother's] parental rights in that [Mother] is able to provide [Child] with the essential parental care, control, and subsistence[?]

2. [Whether the trial c]ourt erred as a matter of law and abused its discretion in terminating [Mother's] parental rights in that the conditions which led to the removal or placement of [Child] no longer existed or were substantially eliminated[?]

3. [Whether the trial c]ourt was in error in determining the best interest of [Child] would be served by terminating [Mother's] parental rights[?]

---

[3] This Court has recently held that we will address *sua sponte* the orphans' court's responsibility to appoint counsel pursuant to 23 Pa.C.S.A. § 2313(a). **See In re K.J.H.**, 180 A.3d 411, 413 (Pa. Super. 2018).  Our Supreme Court, in **In re Adoption of L.B.M.**, 161 A.3d 172, 180 (Pa. 2017) (plurality), held that Section 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding.  The Court defined a child's legal interest as synonymous with his or her preferred outcome.  In this case, in an order entered April 17, 2017, the trial court appointed attorney Heather Paterno, Esquire, as counsel for Child. Attorney Sarah Hoffman, Esquire, acted as Child's guardian *ad litem*. Therefore, we conclude that the trial court fulfilled its responsibility to appoint counsel pursuant to 23 Pa.C.S.A. § 2313(a).

4. [Whether the trial c]ourt was in error in determining the best interests of [Child] would be served by changing the goal for [Child] to adoption and terminating [Mother's] parental rights[?]

(Mother's Brief, at 8).[4]

Our standard of review of a change of a child's goal is as follows:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

When considering a petition for goal change for a dependent child, the trial court considers:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

---

[4] Mother includes the question of goal change in her questions presented and cites some goal change cases in her brief, but fails to include the issue of goal change in her prayer for relief. (*See* Mother's Brief, at 16). Nevertheless, we find that the standard for a change of goal has been met in this case.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S.A. § 6351(f)).

Additionally, section 6351(f.1) requires the trial court to make a determination regarding the child's placement goal:

> **(f.1) Additional determination.**—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> *       *       *
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(2).

On the issue of a placement goal change, this Court has stated:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, 393 Pa. Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent . . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S.[A.] § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re E.F.V.*, 315 Pa. Super. 246, 461 A.2d 1263, 1267 (1983) (citation omitted). . . .

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006).

Our standard of review in the termination of parental rights is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

- 8 -

* * *

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8) and (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In the Interest of K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 484 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

We have examined the opinion entered by the trial court in this matter on November 21, 2017, in light of the record before us, and are satisfied that that opinion is a complete and correct analysis of this case.

Accordingly, we affirm the decree and order of the Court of Common Pleas of Dauphin County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b), and changed Child's goal to adoption, on the concise, thorough, and well-written opinion of the Honorable John F. Cherry.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/18



IN THE INTEREST OF         : IN THE COURT OF COMMON PLEAS
                                        : DAUPHIN COUNTY, PENNSYLVANIA
                                        :

L.S., a Minor                           : NO. 25 AD 2017
                                        :
                                        :
                                        :
                                        :

## TRIAL COURT OPINION

This appeal follows the Decree of Involuntary Termination of Parental Rights entered May 18, 2017, of ████████████ ("Mother") to ████████████ ("L.R.S."), born ████████████ 2015.[1] At the conclusion of the hearing on the Petition for Goal Change to Adoption and Involuntary Termination of Parental Rights, we set forth our findings of fact and conclusions of law. (Transcript of Proceedings, May 18, 2017, pp. 148-157) (hereinafter, "N.T.").[2] We amplify those findings and conclusions with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of L.R.S.'s birth on ████████████, 2015, Dauphin County Social Services for Children and Youth ("Agency") received a referral which indicated that the baby tested positive for cocaine and methadone and required admission to the neonatal intensive care unit ("NICU"). (N.T. p. 24). L.R.S. remained in the NICU until her discharge on October 19, 2015. (N.T. p. 25).

---

[1] The named father, ████████████ denied paternity and did not participate in any of the proceedings, despite proper notice. (N.T. pp. 20-22). Paternity testing ruled out other individuals identified as possible father. (N.T. p. 23). No father has filed an appeal.

[2] By Order filed July 20, 2017, the Superior Court directed that Mother show cause why the appeal should not be dismissed as untimely. On August 7, 2017, the Superior Court denied Mother's Petition for Allowance of Appeal and remanded the matter for the Trial Court's consideration of whether Mother satisfied the criteria for grant of *nunc pro tunc* appeal. On October 11, 2017, we granted Mother's Petition for Leave to File Appeal *Nunc Pro Tunc*. Mother filed a Notice of Appeal on October 23, 2017.

1

On October 19, 2015, the Agency took care and custody of L.R.S. and placed her with the foster family with whom she has resided since that date. (N.T. p. 23; N.T. p. 25).

The Agency established a Family Service Plan. (N.T. p. 53 ). The service objectives and Mother's achievement of those objectives are as follows:

1. Attend all hearings, meetings and treatment plan meetings for L.R.S.

   Mother attended 4 out of 5 hearings. She appeared at 2 of those hearings under the influence of drugs or alcohol. (N.T. p. 27; N.T. pp. 53-54).

2. Sign all necessary release forms for self and child.

   Mother signed some but not all necessary releases. (N.T. p. 54).

3. Provide the Agency with contact information and any new addresses.

   Mother moved 4 times. She failed to consistently provide information as to her address. For several time periods, the Agency had no information as to Mother's whereabouts. (N.T. pp. 55-59). Mother has failed to establish a permanent residence. In the months preceding the termination hearing, Mother resided in a shelter. (N.T. p. 71).

4. Undergo drug and alcohol evaluation and follow through with all recommendations.

   Mother failed to provide information as to appropriate drug counseling. Mother participated in a voluntary program, the Discovery House. (N.T. pp. 101-102). The Discovery House provides Methadone maintenance and Suboxone maintenance treatment. (N.T. p. 103). Mother did not participate in any type of treatment with a psychologist or psychiatrist at Discovery House. (N.T. p. 104). Mother never told anyone from Discovery House that the Agency required her to receive counseling. (N.T. pp. 107-108).

5. Provide urine screens to the Agency.

   Mother failed to consistently provide urine screens. Mother provided only 30 out of 217 required screens. (N.T. p. 61; p. 141).

6. Participate in the Holistic Family Support Program.

   The Agency was unable to demonstrate the necessary sobriety to warrant referral to the program. (N.T. p. 62).

2

7. <u>Obtain a psychological evaluation.</u>

Mother scheduled, but either cancelled or failed to appear for, numerous appointments with Hempfield Behavioral Health. (N.T. p. 64). Mother underwent evaluation on November 15, 2016. *Id.*

Mother failed to return to Hempfield Behavioral Health to discuss the findings of the evaluation or to follow up with recommendations for treatment. (N.T. p. 65). *See,* discussion of testimony of Howard Rosen, PH.D., *infra*.

Mother missed 6 out of 12 scheduled appointments with the service provider Northwestern Human Services, and was discharged as unsuccessful from the program. (N.T. p. 68). Mother was also discharged as unsuccessful from the services of the Dauphin County Case Management Unit. (N.T. p. 69).

8. <u>Participate in and complete a parenting assessment.</u>

Mother failed to complete a parenting assessment. (N.T. p. 65; p.71).

9. <u>Demonstrate, through interaction with L.R.S., parenting skills acquired through participation in a parenting education program.</u>

Mother never attended a parenting class. Mother attended only 10 visits with L.R.S. in 19 months. (N.T. p. 66).

The Agency declined to allow visits on October 22, 2015 and October 27, 2015, because Mother appeared to be under the influence of drugs or alcohol. (N.T. p. 77).

Because of the nominal amount of visitation exercised, the Agency could not determine whether Mother is able to appropriately engage with L.R.S. (N.T. p. 66).

## DISCUSSION

A. <u>The Agency met its burden of proving that statutory grounds exist for termination of Mother's parental rights.</u>

The standard of review governing the trial court's termination of parental rights is well settled. Namely,

> When reviewing an appeal from a decree terminating parental rights, [the Superior Court] is limited to determining whether the

3

decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa. Super.1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, [the Superior Court] must accord the hearing judge's decision the same weight we would give to a jury verdict. *See In re Child M.*, 452 Pa. Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992). *In re C. S.* 761 A.2d 1197, 1199 (Pa. Super. 2000).

The Agency, as the party seeking termination, bears the burden of establishing, by clear and convincing evidence, that grounds exist for termination of parental rights. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa. Super. 2002). The standard of clear and convincing evidence means "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203-1204 (Pa. 1989). The Agency met its burden of proof and that termination of Mother's parental rights was proper.

The record establishes by clear and convincing evidence that for an unreasonable period of time, Mother failed to remedy the conditions which led to placement, although services and opportunities to do so were made readily available to her. The Agency sought termination of Mother's parental rights based upon the Adoption Act, 23 Pa.C.S. §2511(a)( 1 ), (2), (5) and (8) , which provide:

(1)     The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)     The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental

4

care, control or subsistence necessary for his physical or mental, well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(1), (2), (5) and (8).

In considering whether the party seeking termination has satisfied these provisions, the Appellate Court keeps in mind that a parent has an affirmative duty to work towards the return of his or her children. *In re Adoption of J.J.*, 511 Pa. 590, 602, 515 A.2d 883, 889 (Pa. Super. 1986). At a minimum, that "affirmative duty requires that the parent show a willingness to cooperate with CYS to obtain the rehabilitative services necessary to enable the parent to meet the duties and obligations inherent in parenthood." *Id*. In a termination proceeding, the trial court must consider all the circumstances in determining whether a parent has fulfilled his obligations; the court must further measure the parent's performance in light of what would be expected of any individual under similar circumstances. *Matter of M.L.W.*, 307 Pa. 29, 33-34,

5

452 A.2d 1021, 1023-24 (1982) (*citations omitted*). Further, the Appellate Court need only agree with the trial court's decision as to any one subsection in order to affirm the termination of parental rights. *In re J.E.* 745 A.2d 1250 (Pa. Super. 2000). See also, *In re J.I.R.*, 808 A.2d 934, 940 n.6 (Pa. Super. 2002). The Superior Court has explained:

> The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have her parental rights terminated. There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> \*\*\*
>
> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008).

Applying the provisions Section 2511 (a)(8), we find that L.R.N. was removed from Mother's care at birth on ██████████, 2015 and placed in the custody of the Agency upon her discharge from the neonatal intensive care unit on October 19, 2015. L.R.S. has remained in foster care since that time. Therefore, more than 12 months have elapsed from the date of removal or placement.

Although we based our termination decision upon 23 Pa.C.S.A. §§ (a)(8), we also found clear and convincing evidence to establish grounds for termination under 23 Pa.C.S.A. §§

6

(a)(1),(2) and(5). "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, [her] parental rights may be forfeited." *In re* A.L.D., 797 A.2d 326 (Pa. Super. 2002).

Mother's failure to address significant mental health and substance abuse problems have prevented her from making any progress toward demonstrating the ability to properly parent L.R.S.. Mother underwent psychological evaluation by Howard S. Rosen, Ph.D., on November 15, 2016. (N.T. p. 118). Dr. Rosen testified that Mother's diagnosis of bipolar depression and generalized anxiety problems relate to her childhood history of mental, physical and sexual abuse. (N.T. pp. 119-120). Mother's mental health history placed her at significant disadvantage in adjustment to parenthood. (N.T. p. 120). Mother has 7 children, all of whom have been removed from her care. (N.T. p. 120).

In the psychological evaluation, Dr. Rosen found that Mother makes excuses and blames others for her shortcomings and is, therefore, resistant to obtaining necessary treatment. (N.T. pp. 123-124). Dr. Rosen concluded that the results of the Minnesota Multiphasic Personality Inventory testing were consistent with egocentric and reckless behavior. (N.T. p. 125). Dr. Rosen opined that Mother's prognosis for improvement is poor based upon the longstanding nature of her mental health problems and drug abuse. (N.T. p. 125).

Dr. Rosen concluded that Mother's mental health status presents a moderate risk of child abuse and neglect. Dr. Rosen recommended that Mother participate in one of Dauphin County's evidence-based parenting programs, the Incredible Years Series or the Positive Parenting Program. (N.T. p. 127). Mother did not participate in either program. (N.T. p. 127). Mother failed to follow- up with Dr. Rosen to review his findings and obtain complete recommendations for treatment. (N.T. pp. 124-126).

7

Dr. Rosen opined that Mother requires treatment for the co-occurring disorders of drug/alcohol abuse and mental health problems. (N.T. pp. 127-128). Mother failed to seek such treatment. (N.T. pp. 127-128). Dr. Rosen testified that Mother's attendance at Discovery House Methadone Clinic, a voluntary program, fails to adequately address her addiction and need for therapy. (N.T. pp.116-117; p. 126). Based upon the evidence presented, Dr. Rosen believed Discovery House to be a Methadone clinic which provides a drug alternative. (N.T. p. 116). There was no evidence presented that Mother has adequately addressed her addiction by her association with Discovery House. (N.T. p. 116).

At the time of the termination hearing, Mother acknowledged her lack of stability and inability to parent. (N.T. p. 143). Mother seeks additional time to demonstrate the ability to properly care for L.R.S. In considering the relevance of a parent's minimal progress in relation to a child's need for permanency, our Appellate Court has stated,

> We recognize that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parental responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law which contemplates only a short period of time, to wit eighteen months, in which to *complete* the process of either reunification or adoption for a child who has been placed in foster care.

*In re I.J.*, 972 A.2d 5, 13 (2009) (*internal citations omitted*).

The record overwhelmingly establishes that Mother failed to fully meet any single aspect of the Family Service Plan. Throughout the history of the case, Mother failed to avail herself of the services extended to her by the Agency. (N.T. pp. 67). She has failed to address her addiction and mental health problems. (N.T. pp. 67-69). Notably, because of Mother's failure to accomplish any aspect of the Family Service Plan, the Agency sought and the Court granted a

8

finding of aggravated circumstances on May 24, 2016, thus relieving the Agency of further efforts toward reunification. (N.T. p. 25).

B. Best Interests Analysis

Pursuant to Section 2511(b), a court must give "primary consideration to the [developmental, physical and emotional] needs and welfare of the child." *In re J. E.*, 745 A.2d 1250, 1254-55 (Pa. Super. 2000) *(citations omitted.)* The statute provides,

> Other considerations. - The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6), or (8), the court shall not consider any efforts by the parent to remedy the condition described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

In addition, the Superior Court has stated that while "Section 2511(b) does not explicitly require a bonding analysis, [case law provides that] analysis of the emotional bond, if any, between a parent and a child is a factor to be considered in determining the developmental, physical and emotional needs and welfare of the child under §2511(b)." *In the Matter of K.K.R.-S., K.M.R., K.A.R.*, 958 A.2d 529, 533 (Pa. Super. 2008). The Superior Court has explained,

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent child bond, paying close attention to the effect of permanently severing the bond.

*In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006).

9

As to the impact of removal of L.R.S. from her pre-adoptive foster home, Dr. Rosen strongly recommended against reunification with Mother. (N.T. pp. 129-130). Dr. Rosen testified that, because of a child's increasing developmental capacity to recall, during the period of 6 months to 4 years of age, a change of a child's primary caregiver may cause significant, lasting emotional difficulties. (N.T. p. 129). Dr. Rosen concluded that no bond exists between Mother and L.R.S., such that L.R.S.'s familiarity with Mother equates to that of her meeting a complete stranger. (N.T. pp. 115-116). He opined that L.R.S.'s best interests are served by her remaining with her pre-adoptive foster family. (N.T. 129).

Mother presented no evidence upon which we may find that a bond exists which, if broken, will cause detriment to L.R.S.. Mother visited L.R.S. only 10 times in 19 months, which equates to a miniscule amount of time in the child's life (N.T. p. 39; N.T. p. 115).

In contrast, we find that L.R.S. has bonded with her foster parents and that her best interests are served in their home. They have provided L.R.S. with all of the day to day care, love and protection she has required since her discharge from the NICU on October 19, 2015. (N.T. p. 14). They are the only family she has ever known. L.R.S. calls her foster parents Mommy and Daddy. (N.T. p. 15). The other children in the home adore her, and she is bonded with them. (N.T. p. 14). L.R.S. is an active, happy and talkative toddler. (N.T. p. 16).

We will not disrupt the permanency and stability L.R.S. enjoys based upon the hope that Mother can resolve her longstanding drug addiction and acquire the necessary commitment to properly parent L.R.S.. To do so would be detrimental to L.R.S.'s best interests.

The evidence also supports the Agency's determination of the unsuitability of any family resource offered by Mother. (N.T. p. 72). Mother's sister never contacted the Agency to address

10

her suitability as a resource. (N.T. p. 75). The other resource offered, Mother's mother, had in the past subjected Mother to significant abuse. (N.T. p. 120-121).

CONCLUSION

For all of these reasons, the decree should be affirmed.

BY THE COURT:

JOHN F. CHERRY, JUDGE

November 21, 2017

Distribution:

Michael Dennis Matter, Esq., 39 W. Main St., Mechanicsburg, PA 17055
Sarah Elizabeth Hoffman, Esq., PO Box 4468, Harrisburg, PA 17111-0468
Natalie Maureen Ryan Burston, Esq., 1001 North 6th Street, Harrisburg, PA 17102
Heather L. Paterno, Esq., 4250 Crums Mill Road, Ste 301, Harrisburg, PA 17112

11